UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA MARIE DYER,

        Petitioner,

                                CASE NO. 2:06-CV-14898

v.                            JUDGE GEORGE CARAM STEEH

                                MAGISTRATE JUDGE PAUL J. KOMIVES

CLARICE STOVALL,

        Respondent.

_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    *Sentencing Claims (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.    *Jury Trial Right (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               a. Clearly Established Law: <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> . . . . . . . . . . . . . . . . . . . . . 9
               b. Application of <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> to Michigan Sentences . . . . . . . . . 11
          2.    *Inaccurate Guidelines Scoring (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               a. Inaccurate Scoring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               b. Proportionality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    F.    *Evidentiary Claims (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               a. Search Warrant Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               b. Group Photograph . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    G.    *Jury Instruction Claim (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    H.    *Prosecutorial Misconduct Claims (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
               a. Disparaging Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
               b. Arguing Facts Not in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
               c. Vouching . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    I.    *Sufficiency of the Evidence Claim (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    J.    *Ineffective Assistance of Counsel Claims (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

                a. Failure to Object to Prosecutorial Misconduct and Jury Instruction . . . . . . . . . . . . 31
                b. Failure to Object to Guidelines Scoring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
                c. Failure to Offer Exculpatory Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
                d. Failure to Ask for Redaction of Codefendant's Statement . . . . . . . . . . . . . . . . . . . 33
                e. Failure to Move to Suppress Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      K.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.        <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*     *     *     *     *

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.      <u>REPORT</u>:

A.      *Procedural History*

     1.      Petitioner Felicia Maria Dyer is a state prisoner, currently confined at the Scott Correctional Facility in Plymouth, Michigan.

     2.      On September 16, 2003, petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On September 30, 2003, she was sentenced to a term of 15-30 years' imprisonment on the assault conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction..

     3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.      THE FOLLOWING EVIDENTIARY RULINGS DENIED APPELLANT DUE PROCESS OF LAW:

          a.      The trial court erred when it allowed the prosecution to offer evidence that a search warrant had been executed at [appellant's] home five weeks before the incident in the instant case and erred when it allowed the prosecution to offer evidence that various types

of ammunition and a holster were seized pursuant to the execution of that warrant. It also erred when it denied the motion for mistrial.

b.      The trial court erred when it admitted a group photograph of appellant and some acquaintances that was unfairly prejudicial and lacked probative value.

II.      PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THE FOLLOWING WAYS:

1.      Counsel failed to object to the court's erroneous statement concerning the prosecution's burden of proof.

2.      At sentence, counsel failed to object to the scoring of the offense variable 6 at 50 points and the scoring of offense variable 3 at 25 points resulting in a disproportionate sentence.

3.      Counsel failed to offer exculpatory evidence as to ownership of the ammunition and the holster and advised appellant to give up her right to testify.

4.      Trial counsel failed to ask that the co-defendant's statement be redacted.

5.      Counsel failed to ask that a witness' out of court and subsequent in-court identification of appellant be suppressed because no counsel was present at the line-up when David Carter made his identification, and the line-up itself was impermissibly suggestive.

6.      Trial counsel failed to object to prosecutorial misconduct.

III.      THE TRIAL COURT'S PRELIMINARY INSTRUCTION ON THE BURDEN OF PROOF DENIED APPELLANT HER RIGHT TO DUE PROCESS OF LAW AND RIGHT TO A JURY TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS.

IV.      APPELLANT'S GUIDELINES WERE INACCURATELY SCORED RESULTING IN A DISPROPORTIONATE SENTENCE

V.      PROSECUTORIAL MISCONDUCT DENIED APPELLANT DUE PROCESS OF LAW IN THE FOLLOWING WAYS:

1.      The prosecutor repeatedly referred to the defense strategy as a distraction in both his opening argument and in the rebuttal argument

which comments also constitute a comment on the appellant's exercise of her constitutional rights.

2. The prosecutor argued a fact not in evidence in order to claim that it had proved the intent to murder and argued another fact not in evidence to connect appellant to a gun.

3. The prosecutor vouched for his witnesses.

VI. APPELLANT'S CONVICTION FOR ASSAULT WITH INTENT TO COMMIT MURDER SHOULD BE REVERSED WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE THE ELEMENT OF INTENT.

The court of appeals found no merit to petitioner's claims, and affirmed her conviction and sentence. *See People v. Dyer*, No. 252305, 2005 WL 473913 (Mich. Ct. App. Mar. 1, 2005) (per curiam).

4. Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court, as well as a claim that the Michigan sentencing guidelines violated her right to a jury trial. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Dyer*, 474 Mich. 900, 705 N.W.2d 119 (2005).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 30, 2006. As grounds for the writ of habeas corpus, she raises the seven claims that she raised in the Michigan Supreme Court.[1]

6. Respondent filed her answer on May 7, 2007. She contends that petitioner's evidentiary and prosecutorial misconduct claims are without merit and that all of petitioner's claims are without merit.

7. Petitioner filed a reply to respondent's answer on June 19, 2007.

---

[1]The claims are numbered differently than in petitioner's state court briefs. Throughout this Report I use the numbering set forth in petitioner's habeas application.

4

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the non-fatal shooting of Lorrie Richbow on February 8,

2003.  Petitioner was tried jointly with her codefendant, Chanika Moore.  The evidence adduced at

trial was summarized by the Michigan Court of Appeals:

> Defendants' convictions arise from allegations that, in the early morning of February 8, 2003, defendant Dyer shot the complainant while riding in a car driven by defendant Moore. At approximately 2:30 a.m., the complainant was walking from a friend's house to get into David Carter's car when defendants' car pulled up. According to the complainant, defendant Moore got out of the car, made a comment, and then defendant Dyer "grabbed [the complainant's] jacket" and asked if it was leather. A fight ensued, and eventually some men intervened.
>
> The complainant got into the passenger side of Carter's car, and Carter quickly drove away. Defendants got into defendant Moore's car, with defendant Moore driving and defendant Dyer in the passenger seat, and followed Carter's vehicle. Carter estimated that the chase lasted five minutes. According to the complainant, defendant Moore attempted to run Carter's car "off the road," and "kept trying to swerve [them] off the road." She also saw defendant Dyer "hanging out" of the window. Carter testified that defendants' car was so close that it almost hit his car and, at one point, he had to swerve onto a sidewalk to avoid being hit. Carter saw defendant Dyer leaning out of the window, and saw her arm extended. Both Carter and the complainant heard a gunshot, and the complainant felt a "nick."
>
> The complainant identified both defendants at a lineup. At trial, the complainant testified that she was "positive" that defendant Moore was the driver of the pursuing vehicle, and that defendant Dyer was seated on the passenger side. At trial, Carter identified defendant Moore as the driver and defendant Dyer as the woman he saw leaning out of the passenger side window. Although Carter saw defendant Dyer's arm extended and heard a shot, he did not see a gun. At the lineup, Carter identified defendant Moore as the driver, but originally identified someone other than defendant Dyer as the shooter. Shortly after the lineup was concluded, Carter indicated to a police officer that he chose the wrong person. He then identified defendant Dyer from a photo array of the original lineup. Other witnesses, including the complainant's brother, identified defendants as being involved in a brawl with the complainant, and also indicated that defendants left after Carter and the complainant.

*Dyer*, 2005 WL 473913, at *1, slip op. at 1-2.

C.     *Procedural Default*

Respondent first contends that petitioner's evidentiary and prosecutorial misconduct claims

5

are barred by petitioner's procedural default in the state courts, because petitioner failed to object to the alleged errors at trial. The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his trial counsel was ineffective for failing to object at trial. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that counsel was ineffective petitioner must

show, *inter alia*, that his objections would have succeeded. Given that the cause and prejudice

inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply

consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp.

2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf.*

*Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims

where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sentencing Claims (Claims I & II)*

Petitioner first raises several challenges to her sentence. In her first claim, petitioner contends that the imposition of her sentence by the trial court based on facts not found by the jury violated her right to a jury trial. In her second claim, petitioner argues that the sentencing guidelines were improperly scored, resulting in a disproportionate sentence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Jury Trial Right (Claim I)*

Petitioner first argues that she was denied her right to a jury trial when the trial court imposed sentence based on facts not found by the jury. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a. *Clearly Established Law:* <u>*Apprendi*</u>*,* <u>*Blakely,*</u> *and* <u>*Booker*</u>

Petitioner's claim is based on the Supreme Court's *Apprendi* line of cases. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for

the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

### b. Application of <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> to Michigan Sentences

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely*. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases

the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; *cf. Williams v. Benik*, No. 04-C-966, 2005 WL 300379, at *2 (Jan. 26, 2005), *vacated in part on other grounds*, 2005 WL 331743 (W.D. Wis. Feb. 8, 2005) (upholding state's indeterminate sentencing scheme under *Blakely*); *State v. Rivera*, 102 P.3d 1044, 1054-55 (Hawai'i 2004) (same); *Commonwealth v. Junta*, 815 N.E.2d 254, 262 n.11 (Mass. Ct. App. 2004) (same); *Commonwealth v. Smith*, 863 A.2d 1172, 1178 (Pa. Super. Ct. 2004) (same). Accordingly, the Court should conclude that petitioner is not

entitled to habeas relief on this claim.

2.      *Inaccurate Guidelines Scoring (Claim II)*

Petitioner next contends that the trial court erred in scoring her sentence under the sentencing guidelines, and that this in turn resulted in the imposition of a disproportionate sentence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Inaccurate Scoring*

Petitioner first contends that the trial court erred in scoring Offense Variable 3 (OV3) (physical injury to victim) at 25 points, and in scoring Offense Variable 6 (OV6) (intent) at 50 points. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Accordingly, petitioner is not entitled to habeas relief on this claim.

*b. Proportionality*

Petitioner also contends that the improper scoring of OV3 and OV6 resulted in a sentence which was disproportionate to her offense. To the extent that petitioner is raising an independent proportionality claim separate from her inaccurate scoring claim, the claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those

punishments which are 'grossly' disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005-06.[2] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by

---

[2] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Bryer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id*. at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly

disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner was convicted of assault with intent to commit murder, an offense carrying a maximum sentence of life imprisonment. *See* MICH. COMP. LAWS § 750.83. The evidence showed that petitioner and her codefendant chased down a car containing two people, and that petitioner fired shots into the car, striking one of the occupants. The jury also determined that petitioner acted with the intent to kill the victim. In these circumstances, petitioner's sentence of 15-30 years' imprisonment is not disproportionate to her offense. *See Bryant v. Yukins*, No. 01-CV-70657, 2001 WL 1218778, at *3 (E.D. Mich. Aug. 17, 2001) (Tarnow, J.) (upholding sentence of 22-60 years' imprisonment on assault with intent to commit murder); *Carter v. Henderson*, 602 F. Supp. 1186, 1188-89 (S.D.N.Y. 1985) (upholding sentence of 15 years' to life imprisonment for attempted murder). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Evidentiary Claims (Claim IV)*

Petitioner next contends that she was denied a fair trial by the erroneous introduction of evidence relating to a search executed several weeks before the crime, and by the introduction of a group photograph. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

To be entitled to habeas relief on her evidentiary claims, petitioner must show more than that the evidence was erroneously admitted under state law. It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas

relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.    *Analysis*

a. *Search Warrant Evidence*

Petitioner first contends that the trial court erred in admitting evidence that a search warrant had been executed at her home a month before the shooting at issue in her trial, and that ammunition and a gun holster had been uncovered in that search. Petitioner argues that this evidence was impermissible other acts evidence under Rule 404(b). The Court should conclude that petitioner is not entitled to habeas relief on this claim. Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Here, the Michigan Court of Appeals concluded that the evidence was relevant to show that petitioner was the shooter and had access to ammunition and a gun–the gun which went with the empty holster uncovered in the prior search. Thus, "there were legitimate, material, and contested grounds on which to offer the evidence." *Dyer*, 2005 WL 473913, at *6, slip op. at 7. Because the evidence was relevant, its admission did not deprive defendant of a fair trial.

b. *Group Photograph*

Petitioner also contends that she was denied a fair trial by the introduction of a group

photograph showing her with friends. She argues that the photograph was unduly prejudicial because it depicted what could be construed as gang activity. However the Michigan Court of Appeals, which reviewed the photograph, concluded that the photograph did not depict gang activity, but rather a group of people having a good time. *See Dyer*, 2005 WL 473913, at *7, slip op. at 8.[3] Further, the photograph was relevant because it showed petitioner wearing braids in her hair, consistent with Carter's explanation for why he had failed to identify petitioner at the pretrial lineup. *See id.* at *7, slip op. at 7-8. Even if the state courts improperly balanced the probative value of the photograph against its prejudicial effect, petitioner has not established that the evidence was so "totally unreliable" that the jury was not "competent to uncover, recognize, and take due account of its shortcomings." *Barefoot*, 463 U.S. at 899. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Jury Instruction Claim (Claim V)*

        In her fifth claim, petitioner contends that the trial court's preliminary instruction on the burden of proof deprived her of a fair trial. The court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.      *Clearly Established Law*

        In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431

---

[3]A copy of the photograph is attached as Appendix 6 to petitioner's brief in the Michigan Supreme Court, which is included in the Rule 5 materials filed with this Court.

U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal).  As the Supreme Court noted in *Estelle*, this Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

During *voir dire*, the trial judge attempted to explain to the jury the difference between the burden of proof in a civil and criminal case.  The court explained that, in a civil case, the side with 51% of the evidence in its favor would win.  The court then explained that, in a criminal case, the burden on the prosecution was higher, and that the prosecution must prove each element beyond a reasonable doubt.  The court continued: "We don't know exactly how much that is.  We can't exactly quantify that, but we do know it is substantially more than fifty-one percent."  Trial Tr., Vol. I, at 42.  Petitioner contends that the trial court's instruction, because it was vague as to how much more than "51%" the evidence had to be, lowered the prosecution's burden proof.  The Court should disagree.

Were the language to which petitioner points the court's only guidance to the jury regarding the prosecution's burden of proof, petitioner's claim would have some weight.  Here, however, the

trial court repeatedly and accurately explained to the jury the prosecution's burden and the reasonable doubt standard. Immediately following the portion cited by petitioner, the court instructed that a reasonable doubt is a "fair, honest doubt, growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense." *See* Trial Tr., Vol. I, at 44. The court gave an identical instruction in the final instructions to the jury. *See id.*, Vol. IV, at 124. Further, immediately after the portion cited by petitioner, the court repeatedly instructed the jury that the prosecutor bore the burden of proving each element of the offense beyond a reasonable doubt. *See id.*, Vol. I, at 44, 45, 48. The trial court's further explication of the reasonable doubt standard was appropriate. As the Supreme Court has explained:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citations omitted) (internal quotation omitted). Here, the court's instructions as a whole adequately conveyed to the jury the reasonable doubt standard, and the trial court's comparison of the reasonable doubt standard to the preponderance of the evidence standard did not alter this fact. *See Degraffinreid v. Lafler*, No. 04-CV-73732, 2006 WL 2162204, at *11 (E.D. Mich. July 31, 2006) (O'Meara, J.) (rejecting same claim). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Prosecutorial Misconduct Claims (Claim VI)*

Petitioner next contends that she was denied a fair trial by several instances of prosecutorial misconduct. Specifically, she contends that the prosecutor improperly disparaged the defense,

argued facts not in evidence, and vouched for the prosecution witnesses. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.  *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.  *Analysis*

*a. Disparaging Defense*

During opening argument, the prosecutor told the jury that he expected that the defense would try to throw up some "distractions," notably that the complainant and chief witness had been drinking or taking drugs. *See* Trial Tr., Vol. II, at 123. During rebuttal argument, the prosecutor asked why defense counsel attacked the witnesses' identifications based on their intoxication when

the defendants admitted to being at the house where the incident began, suggesting that defense counsel's argument was a "smokescreen". *See id.*, Vol. IV, at 114-15. The prosecutor also argued that counsel's suggestion that a third person had fired the shots from the backseat of the car was "ridiculous" based on the testimony and physical evidence. *See id.* at 121. Petitioner argues that these comments improperly disparaged the defense. The Michigan Court of Appeals rejected this claim, explaining that "viewed in context, the prosecutor's remarks conveyed his contention that, based on the evidence, the misidentification defense was a pretense and unreasonable." *Dyer*, 2005 WL 473913, at *8, slip op. at 8-9. This determination was reasonable.

Here, the prosecutor's comments were permissible characterizations of the evidence. A prosecutor is free to argue that a defendant's theory is implausible in light of the evidence presented at trial. *See United States v. Catlett*, 97 F.3d 565, 572 (D.C. Cir. 1996) (prosecutor's comparison of defense counsel's attempts to divert jurors' attention from facts of case with pickpocket's diversion of his victim's attention was neither improper nor prejudicial); *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996) (no denial of due process where prosecutor stated: "These defense counsel, they represent their clients, they come in here and say what they want to help their clients."); *United States v. Emenogha*, 1 F.3d 473, 481 (7th Cir. 1993) (trial was not fundamentally unfair where prosecutor disparaged defense counsel by stating: "Now, Ms. Carotheres went on at length about the evidence the government presented where there were no tapes of this, no videotapes of that, no da da da da, da da da. Well, can you imagine if we left the investigation of this case to a criminal defense attorney what kind of evidence we would have?"); *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992) (defendant not denied a fair trial by prosecutor's description of the defense as "ridiculous."). Accordingly, the Court should conclude

that petitioner is not entitled to relief on this claim.

### b. Arguing Facts Not in Evidence

Petitioner also argues that the prosecutor denied her a fair trial by arguing facts not in evidence. First, petitioner argues that the prosecutor mischaracterized the evidence when he said that Carter testified that he saw petitioner's hand go up in an upward motion. *See* Trial Tr., Vol. IV, at 76-77, 88, 119. Petitioner argues that this comment was improper because Carter only testified that he saw petitioner's arm extended. Even assuming that the prosecutor's comment was a mischaracterization of the testimony, rather than merely using different words to describe the same thing, petitioner has not shown how this argument prejudiced her. Whether petitioner's arm was in an upward motion or not, the testimony of both victims established that she was leaning out of the car and fired a shot directly into the car, following a fight between petitioner and her codefendant, and the victim who was shot. As discussed below in connection with petitioner's sufficiency of the evidence claim, the circumstances of the shooting provide ample evidence of petitioner's intent to kill regardless of whether she swung her arm upward.

Petitioner also contends that the prosecutor argued facts not in evidence when he suggested that "remnants" of a gun had been found in petitioner's home. Viewed in context, it is clear that the prosecutor used "remnants" not to mean pieces of an actual gun, but accessories associated with a gun:

> What other evidence have you been presented with? You've been presented with the fact that there was a search warrant that was conducted on Defendant Dyer's residence and we know that there was a holster there and there were various kinds of ammunition. There wasn't a gun recovered at that time, but we know that there were remnants of a gun that was recovered.

Trial Tr., dated 9/15/03, at 87. As this context makes clear, the prosecutor was not using the term

"remnant" in the sense of its proper dictionary definition of a small part or fragment but to refer to the other indicia of the presence of a gun, and in light of the sentence immediately proceeding the "remnant" sentence the jury would have interpreted the prosecutor's comment in this way. Because there was evidence that a holster and ammunition were recovered, the prosecutor's comment was not improper. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

### c. Vouching

Petitioner also argues that the prosecutor improperly vouched for the credibility of his witnesses. With respect to Carter, the prosecutor stated that "[h]e came here and he swore to tell the truth, the whole truth and nothing but the truth as he saw it." Trial Tr., dated 9/15/03, at 77. Likewise, the prosecutor argued that "[y]ou had Miss Richbow's brother come here and testify truthfully as he could remember it." *Id.* at 80. These comments did not amount to improper vouching.

Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[4] Here, while the comments might hew close to the line when viewed in isolation, in context it is clear that the prosecutor neither expressed a personal belief in the witnesses' credibility nor suggested

---

[4]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

knowledge of any facts not in front of the jury. Both comments occurred in a general discussion, based on the evidence and inference from the evidence, of the credibility of the witnesses. In both cases, the prosecutor noted that the witness's testimony did not definitively establish that petitioner was the shooter, and argued that if the witnesses were merely out to get petitioner they would have placed the gun in her hand and testified to seeing her actually fire the shot. *See* Trial Tr., dated 9/15/03, at 77, 80. In this context, the prosecutor's comment did not amount to impermissible vouching. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Sufficiency of the Evidence Claim (Claim VII)*

Petitioner next contends that the prosecution presented insufficient evidence to prove her guilt beyond a reasonable doubt. Specifically, she contends that there was insufficient evidence of her intent. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of assault with intent to commit murder under Michigan law. Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be

guilty of a felony[.]" M<span>ICH</span>. C<span>OMP</span>. L<span>AWS</span> § 750.83.  Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  Further, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

2.  *Analysis*

The Michigan Court of Appeals rejected petitioner's sufficiency of the evidence claim, concluding that the circumstances of the shooting were sufficient to infer beyond a reasonable doubt that petitioner intended to kill the victim.  *See Dyer*, 2005 WL 473913, at *16, slip op. at 17.  The Court should conclude that this determination was reasonable.

Much of petitioner's argument focuses on what she views as contradictions or inconsistencies in the witnesses' testimony.  However, it is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  With respect to the sufficiency of the evidence of her mental state, as explained above it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence."  *Warren*, 161 F.3d at 361 (internal quotation omitted).

Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)). Thus, even in the absence of any evidence that she expressed an intent to kill or succeeded in injuring the person at whom she was firing, petitioner's act of firing a gun into the passenger compartment of a moving car is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill the victim. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *People v. Ritsema*, 105 Mich. App. 602, 609, 307 N.W.2d 380, 383 (1981);

*People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 706 (1974). Further, the fact that the evidence may have supported another version of events–that petitioner was firing to scare the victim–is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Ineffective Assistance of Counsel Claims (Claim III)*

Finally, petitioner raises a number of claims relating to the effectiveness of her counsel. Specifically, she contends that her trial counsel rendered constitutionally deficient performance by failing to: (1) object to the court's statement regarding the burden of proof; (2) object to the scoring of an offense variable at sentencing; (3) offer exculpatory evidence as to the ownership of the gun; (4) ask that her co-defendant's statement be redacted; (5) seek suppression of Carter's identification; and (6) object to prosecutorial misconduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.      *Analysis*

### a. Failure to Object to Prosecutorial Misconduct and Jury Instruction

Petitioner contends that counsel was ineffective for failing to object to the trial court's preliminary instruction describing the reasonable doubt standard, and to the prosecutor's inappropriate comments. As explained above, none of petitioner's prosecutorial misconduct claims have merit, and the court's preliminary description of the reasonable doubt standard did not misstate the prosecutor's burden of proof. Thus, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

### b. Failure to Object to Guidelines Scoring

Petitioner next contends that counsel was ineffective at sentencing for failing to object to the scoring of Offense Variable 6 (OV6). The Michigan Court of Appeals determined that counsel was not ineffective because OV6 was properly scored as a matter of state law. In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). And because the scoring was proper as a matter of state law, any objection by counsel would have been futile. Thus, counsel was not ineffective for failing to raise a meritless objection to the scoring of OV6.

### c. Failure to Offer Exculpatory Evidence

Petitioner also argues that counsel was ineffective for failing to offer exculpatory evidence

as to the ownership of the holster and ammunition found in her home. Petitioner contends that she and her mother could have testified that the gun belonged to her estranged husband, and was stored in a box that he was coming to pick up at some point. Even assuming that counsel should have introduced this testimony, petitioner cannot show that she was prejudiced. The ownership of the gun was irrelevant to the charges. Rather, the relevance of the gun and holster was to show petitioner's access to a firearm, and the fact of her access to the gun did not depend on who actually owned the gun. As the Michigan Court of Appeals reasonably explained, "[e]vidence concerning whether defendant Dyer actually owned the ammunition, gun holster, or the missing firearm would have been of little significance in this case, because the focus was her accessibility to a firearm." *Dyer*, 2005 WL 473913, at *12, slip op. at 13. Because the accessibility of the firearm to petitioner would not have been contradicted by evidence that the gun was owned by her estranged husband, there is not a reasonable probability that the result of the proceeding would have been different had counsel presented this evidence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Ask for Redaction of Codefendant's Statement

Petitioner next contends that counsel was ineffective for failing to seek a redaction of her codefendant's statement to the police. She argues that Moore's references to her should have been redacted, and that the failure to do so violated her right to confront the witnesses against her. Again, however, petitioner cannot establish prejudice, because Moore's statement to the police did not implicate petitioner, and in fact refuted the prosecutor's case. In her statement, Moore denied that she was with petitioner on the day of the shooting, and denied that they had been in a fight with the victim. Specifically, Moore stated that she thought petitioner was at home that day, and that she did

not see petitioner at any time on that day. *See* Trial Tr., dated 9/10/03, at 276-79. Because the statement did not implicate petitioner, and if anything tended to exonerate her, she cannot show a reasonable probability that the result of the proceeding would have been different had the statement been redacted.

Indeed, petitioner cannot even show that a motion to redact the statement would have been granted. In *Bruton v. United States*, 391 U.S. 123 (1968), the Court "held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (discussing *Bruton*, 391 U.S. at 135-36). *Bruton* did not hold, however, that any statement by one co-defendant is automatically inadmissible against another co-defendant. Importantly, in *Richardson* the Court limited the *Bruton* rule to those codefendant confessions that are "facially incriminating" and "expressly implicate" the defendant. *Richardson*, 481 U.S. at 208-09. "As *Richardson* made clear, the *Bruton* exception is a narrow one; it applies only to 'facially incriminating' confessions that by definition 'powerfully incriminat[e]' the defendant and that can be distinguished from statements that become incriminatory only when linked with other evidence introduced at trial." *United States v. Washington*, 952 F.2d 1402, 1405 (D.C. Cir. 1991) (quoting *Richardson*, 481 U.S. at 207-08 (quoting *Bruton*, 391 U.S. at 135)); *see also*, *Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir. 1991). Here, as explained above, Moore's statement was neither "facially incriminating" nor "expressly implicated" petitioner. Thus, its admission without redaction did not violate the Confrontation Clause, and any request by counsel for redaction would have been meritless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on

this ineffective assistance claim.

### e.  Failure to Move to Suppress Identification

Finally, petitioner contends that counsel was ineffective for failing to seek suppression of Carter's pretrial and in-court identifications of her.  Carter initially identified someone other than petitioner in the lineup.  After the lineup concluded, Carter told a police officer that he had changed his mind, and identified petitioner from photographs of the original lineup.  Petitioner contends that Carter's identification was improper because he changed his identification after he was within visual contact with the other victim and her brother, and because both she and Moore were in the lineup.  She argues that counsel should have moved to suppress the lineup identification and Carter's subsequent in-court identification.  The Michigan Court of Appeals rejected this claim, concluding that any motion to suppress would have been denied because there was no evidence that the lineup procedure was unduly suggestive.  *See Dyer*, 2005 WL 473913, at *13, slip op. at 14.  The Court should conclude that this determination was reasonable.

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law."  *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967).  Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972).  A suggestive line-up alone, however, does nor require exclusion of identification evidence.  "The admission of testimony concerning a suggestive and unnecessary identification procedure does

not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pretrial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

Here, petitioner has offered nothing to suggest that the pretrial identification procedures were unduly suggestive. She notes that Carter changed his identification after being in visual contact with the victim and her brother, but as the court of appeals explained petitioner "offers only speculation that Carter's change of mind was prompted by signals from the complainant and her brother." *Dyer*,

2005 WL 473913, at *13, slip op. at 14. Further, Carter explained the circumstances surrounding his change of identification (petitioner's change of hairstyle), and was cross-examined extensively regarding his initial identification and his change of identification. The mere fact that there may have been an opportunity for communication between Carter and the victim does not render the lineup impermissibly suggestive, where there is no evidence that any actual communication occurred or that the victim signaled to Carter whom he should identify. *Cf. United States v. Corgain*, 5 F.3d 5, 9-10 (1st Cir. 1993). Likewise, the lineup was not unduly suggestive merely because it included petitioner and her codefendant. *See United States ex rel. Pella v. Reid*, 527 F.2d 380, 384 (2d Cir. 1975); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (Gadola, J.).

Thus, there was no basis upon which counsel could have moved to suppress the pretrial identification. Likewise, because there was no evidence of a suggestive pretrial lineup, there was no basis to exclude Carter's subsequent in-court identification. *See Crozier*, 259 F.3d at 510; *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994) ("Generally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility."). Accordingly, petitioner cannot show that counsel was ineffective for failing to seek suppression of Carter's identifications, and petitioner is not entitled to habeas relief on this claim.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 6/16/08


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 16, 2008.
>
>                          s/Eddrey Butts
>                          Case Manager